## Case No. 1,847.

### BREVOOR et al. v. The FAIR AMERICAN et al.

[1 Pet. Adm. 87.] [1]

District Court, D. Pennsylvania. 1800.

SALVAGE — ADMIRALTY JURISDICTION — WHO ARE SALVORS—COMPENSATION—APPORTIONMENT AND DISTRIBUTION.

1. An American ship captured by a French privateer, and eight days afterwards rescued by the libellants, and carried into a port of the United States. The vessel and cargo were sold, and afterwards a claim on the ship and on the owners of the cargo, for salvage, allowed by the court.

[Cited in Willard v. Dorr, Case No. 17,679;] American Ins. Co. v. Johnson, Id. 303; Edwards v. Sherman, Id. 4,298; The Merchant. Id. 9,434; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. (47 U. S.) 436; Gates v. Johnson, Case No. 5,-268; New York Harbor Protection Co. v. The Clara, 23 Wall. (90 U. S.) 18. Distinguished in The Missouri, Case No. 9,-654.]

2. Jurisdiction of the district court. Upon what it is founded.

[Cited in Studley v. Baker, Case No. 13,-559.]

3. Courts of admiralty proceed in rem. Courts of common law do not.

[Cited in Hill v. The Golden Gate, Case No. 6,491.]

4. Jurisdiction [in admiralty is] founded in original cause and place of transaction.

5. No case [can be] sustained at common law for salvage on the high sea.

[Cited in Packard v. The Louisa, Case No. 10,652; Clayton v. Harmony, Id. 2,871.]

6. Admiralty courts proceed as often in personam as in rem, [and the] right to proceed in rem does not exclude [the] remedy in personam; [in admiralty as at common law a] party may pursue several remedies, but can have only one satisfaction.

[Cited in The Richard Busteed, Case No. 11,-764.]

7. Bona fide compromise precludes farther demand for salvage.

8. Salvage can only be allowed on the goods actually delivered.

9. [The] quality [and responsibility] of the master is changed by capture [of his vessel]; and, on rescue, he acts in a new capacity.

10. Freight lost by capture [is not chargeable to the receptors who claim salvage where the] voyage [is] destroyed.

Before PETERS, District Judge. This is a case of capture by a French privateer called L'Enfant de la Grande Revanche, of the ship, in the libel mentioned, and her cargo, and a recapture, from a prize-master and eight privateersmen, by the libellants, assisted by a certain Anthony Fachtman, the cook of the Fair American.[2] The cap-

---

[1] [Reported by Richard Peters, Jr., Esq.]
[2] The libel states, that the ship Fair American, Brevoor, master, bound from Philadelphia to Havanna, was taken on the 8th day of October, 1798, by a French privateer, called, L'Enfant de la Grande Revanche. The officers and crew of the Fair American, with the exception of the libellants, John Christian Brevoor, and John Schier, and Anthony Fachtman, cook, of the

ture, recapture, and bringing into Charleston, are agreed in the proceedings, on both sides. The counsel for the respondents have done their clients ample justice, in objecting to evidence of facts, and the law arising upon them. But there is sufficient evidence, legally admissible in such cases, to satisfy me, that this is a case of extraordinary merit, in which great gallantry and good conduct, as well as labour and suffering, were exhibited and endured. I leave the details of the case to be collected from the proceedings, the exhibits and such parts of the evidence of facts, as I shall notice, in my observations hereafter.

I have fully discussed the general principles of the law, on the subject of salvage, in former decrees.[3] It is not given as a mere compensation, for labour and service. It is increased, far beyond this claim, as an incentive and premium, to stimulate others to meritorious and gallant exertions. I lament that these principles are not better understood, among our merchants. They would then, by more liberal allowances to salvors, preclude the necessity of legal adjudications; which create much expense, and seldom give satisfaction. But I am compelled to disregard all considerations, but those of my public duty, and sense of legal obligation and justice.

The points made in this cause by the respondent's counsel, were chiefly these following—1. The jurisdiction of this court is only

Fair American, were taken on board the privateer, and a prize-master, six white men and two negroes, were placed in the Fair American, and her course altered, for Cape Francois. On the 16th day of October, the libellants rose on the prize-master, and the French crew, recaptured the Fair American, and on the 26th day of October, arrived in Charleston, South Carolina, with the said ship, having the French prize-master, &c. prisoners. The libel also states, that the ship Fair American was valued at Charleston, at thirty thousand one hundred dollars, and the cargo, at twenty-five thousand one hundred dollars, and that the cargo has been sold or disposed of, so that no process out of the admiralty court can be issued against the same. The libel, therefore, prays process against the ship, and that the owners of the cargo, Stephen Dutilh and John Gourjon may be summoned, and be obliged to pay, a reasonable salvage to the libellants. J. Ingersoll, T. B. Adams, Proctors. 10th January, 1800.

The separate answer of Stephen Dutilh, admits the arrival in Charleston, and the value of the ship and cargo, and that the cargo was disposed of in Charleston; but prays that the circumstances of the recapture of the Fair American be verified. That after information of the arrival of the Fair American at Charleston was received, application was made by the respondent to the Insurance Company of Pennsylvania, for a reasonable reward to the libellants for their services and exertions, and one thousand dollars were ordered by the insurance company, to be paid to the salvors. The answer also states, that the Fair American and her cargo, were abandoned to the underwriters, and were afterwards disposed of for their account, and for a less sum than that which is stated in the libel, that Stephen Dutilh became the purchaser of the ship, and that she had performed a voyage from Charleston to Hamburg, and back to Philadelphia, since the recapture, and before the filing of the libel. The answer prays that the libel be dismissed, so far as regards the ship Fair American, and the respondent, with costs, &c. Rawle, Proctor. 21st January, 1800.

The separate answer of John Gourjon, admits the sailing of the ship Fair American from Philadelphia for Havanna, and her arrival at Charleston, having goods on board, belonging to the respondent, amounting, per invoice, to $12,973; but, whether she was taken by a French privateer, and afterwards retaken by the libellants, are not admitted. The respondent states, that the ship Fair American arrived in Charleston, where a part of the goods were delivered to, and sold by, an agent for the concerned, employed by the libellant, Brevoor; but that a part of the goods, amounting, per invoice, to $2,319 were embezzled, or otherwise lost, since the alleged recapture, by default of the libellants, or one of them. That the goods sold at Charleston, produced a less sum than their invoice cost. The respondent further says, that previous to the filing of the libel, the underwriters on the goods, directed the sum of $903.55 to be given to the salvors, for their exertions and services, which sum was offered to the salvors, and will be paid to them at any time. The respondent further states, that he abandoned his interest in the cargo of the Fair American to the underwriters, who paid him the sum of $15,822.65 the amount of their subscriptions, deducting charges; and that the goods were sold on account of the underwriters, and with the consent of Captain Brevoor, one of the libellants, without any claim or process against the same for salvage. As to the residue of the libel, praying process against the person of the respondent, in order to compel him to pay salvage, the answer states, that the court ought not to have cognizance of the said plea as affecting the person of the respondent, the court having no jurisdiction thereof, and therefore it is prayed that the court will not proceed further therein, and that the same be dismissed with costs, &c. Moylan, Proctor. 18th July, 1800.

The replication states, that the libellants are ready to verify the facts stated in their libel, by proof; and that it is true that the sum of $1,000 was distributed among them by the agents of the respondent, S. Dutilh, the same having been allowed to them by the Insurance Company of Pennsylvania, but that the same was paid to them on the eve of their departure from Charleston, and when they had not an opportunity to protest against the same being received by them in full satisfaction of salvage for the ship, and the part of the cargo belonging to S. Dutilh; but that the respondents never did consent to receive the same, in full satisfaction of salvage. And that the sum of $903.55 was offered to them by the underwriters, on the goods belonging to John Gourjon, in satisfaction of their claim for salvage, which was refused by them, as insufficient. The replication further states, that although no proceedings had been instituted by the libellants before the filing of their libel, yet they have never abandoned or renounced their claim to salvage. It further states that the libellants have no knowledge of the embezzlement, alleged to have been committed, or of any persons who were concerned in the same, protesting that they, the libellants, were not guilty thereof. 22d July, 1800.

The depositions confirm the statements contained in the libel, and establish the facts alleged in the replication.

[3] See the case of Warder v. Goods Saved from The Belle Creole [Case No. 17,165], and the case of Taylor v. Goods Saved from The Cato [Id. 13,786].

in rem—a delivery of the ship and goods saved, having been made to the owners, the lien of the recaptors is destroyed; and with it, their right to salvage; which grows out of, and is attached inseparably to, the articles saved. It is therefore, not a personal demand. 2. The possession of the ship by Brevoor, is not such as to preserve his lien— He held it in a new capacity—He had parted with his possession, as recaptor, when he engaged as master, after the resale to Dutilh. 3. Compensation for salvage, has been made and accepted. 4. There has been an embezzlement of part of Mr. Gourjon's goods, and Brevoor is responsible. The amount of embezzlement, overbalances any reasonable reward for salvage.

As to the jurisdiction of this court, in cases of salvage on the sea, if it were necessary to determine that point, I should be much disposed to say, it was exclusive. The jurisdiction is founded "ob causam aliquam, a re maritima ortum;" as Selden translates the definition of admiralty jurisdiction, given, in French, "pour le fait de la mer." The place of making a contract, is not so material as the place of performance, in cases even of agreements on land to operate on the sea. See Zouch, on the jurisdiction of the admiralty of England (assertion V. p. 52). The common law courts and some British statutes, calculated to favour jurisdiction in the hands of the king, and other lords, have confined this rule, as much as their circumstances would anywise permit. Yet, in 3 Term R. 267, &c. it is allowed, that admiralty jurisdiction is founded on the subject matter; and collateral circumstances, such as hypothecation under hand and seal, do not oust it. In the case in which this position is recognized, the judges allow the admiralty jurisdiction, in the case of hypothecation, because in the court of admiralty, they proceed in rem, and a court of common law cannot. The true point, as stated by Zouch, seems to be overlooked by the common law courts, in "the struggles which have been made between the court of admiralty and the common law judges, respecting the extent of their jurisdictions." The jurisdiction does not appear to me to be founded on the mode of proceeding; but on the original cause, and the place, of the transaction. It attaches "ob causam a re maritima ortum." Its subjects, according to 3 Bl. Comm. 107, are "pure maritime acquisitions, which are earned and become due on the high seas." I cannot conceive a case more completely within these descriptions of admiralty jurisdictions, than this now before me. Nor do I see how a common law court could legally take cognizance of such a case, or its incidents. "La mer a ses lois comme la terre."

The jurisdiction of this court, is disputed, because, it is alleged, "The goods were delivered to the owners, by Captain Brevoor; and so his lien on them was destroyed; and with it, his claim to salvage. If the claim even continued, it must be by an implied contract, for a quantum meruit, arising on the delivery; and this, being on land, must be prosecuted in a common law court. A distinction is taken, between the case of freight, and other instances of liens, and that of salvage. In the former, if the goods are delivered, the claim continues under the pre-existing contract. But no such contract subsists, in a case of salvage. It is allowed, that if the jurisdiction in salvage was exclusive, it would preclude all common law interferences. But it is only concurrent; and in proof, a dictum of Lord Holt is cited, to shew that a plea in a detainer of goods, on account of a lien for salvage, would be admitted. And if a plea can be supported, so may an action."

No case is produced in a common law court, where a suit there, for salvage on the high seas, was sustained. I have never seen such a case. There does not appear to me, any thing of that mixed nature in this case, which would induce even a legal fiction, to draw the place of this transaction into a common law court. There is no doubt, but that the admiralty had original jurisdiction of the transaction upon which this salvage is claimed; and having this original jurisdiction, it would "have, also, jurisdiction of all consequential questions, though properly determinable at common law." 3 Bl. Comm. 108.

The "subject matter" is an occurrence at sea. A delivery of the articles saved, into a place of safety on land, may be necessary to complete the claim; but does not alter the jurisdiction over the original act. The claim for salvage, as a personal demand, is not an unconditional debt, nor in all cases, is a claim for freight. In either case, the owners may refuse to take the goods. But if they receive them, the debt is absolute. The acceptance of the goods is a consummation, and not an extinguishment of the claim. The cause of action here, does not arise from any implied contract, on the delivery. It originates in the saving on the sea; and is pre-existing to the delivery. The right to salvage is not merely inchoate, before any delivery to the owner, but complete. He has the election to take the thing or not. If he refuses, the thing only is answerable for the reward for salvage. But if he receives the goods, though the lien in the article may be gone, and especially if it passes to a third person, yet the right to salvage continues. It becomes a personal claim, founded on the transaction at sea, and must be prosecuted in personam, in the admiralty. In this court, proceedings are as often in personam, as in rem. Multitudes of precedents could be produced. 3 Bl. Comm. 108, quotes Clarke, Pr. where it is said, "The first process in these courts (admiralty courts) is frequently by arrest of the defendant's person." The admiralty courts, in many cases, possess cumulative powers,

beyond those of the common law. The right to proceed in rem, does not exclude the remedy in personam; though it is taken frequently in preference, for the greater security. In common law courts, as in the admiralty, a party may pursue several remedies; although he can have but one satisfaction. On the instance side of the admiralty, the proceedings are originally (and most commonly) by arrest of the person. 3 Term R. 330.

The case of hypothecation is sui generis, the persons of the owners are not bound. The debt is contracted, in its original ground, solely on the credit, and with the pledge of the ship; which continues, notwithstanding this lien, in the possession of the owners, or their agent, the master. If, on the delivery of goods saved, an actual abandonment of claim to reward is made, or satisfaction given to the perfect contentment, or according to a voluntary agreement, of the salvors, no doubt, there would be an end to the demand. But there is no proof in this case, of such circumstances. It appears rather, that the goods were put into the hands of a respectable merchant, in Charleston, to whom Captain Brevoor applied "for assistance;" (see Dutilh's letter,) they being of a perishable nature, to make the best of them, for all parties. His owner approved of the captain's conduct. But be this as it may, there is no proof of abandonment of claim to, or acquiescence in, satisfaction for salvage.

The underwriters on the ship and goods belonging to Mr. Dutilh, sent the salvors a gratuity of one thousand dollars; and as a gratuity it was taken. So far from their accepting this sum, whatever might have been intended by the donors, as compensation, there is evidence of great dissatisfaction. I join with Messrs. Hazlehurst & Co. in their opinion, (see their letter of 1st February, 1799, among the exhibits,) when they inform of the payment of this gratuity. "Captain Brevoor is amazingly chagrined at the sum given by the underwriters, and we think he well may be, for it is certainly a small amount for so great an undertaking as that of three men, retaking a valuable and fine property, from nine French privateersmen." I consider the underwriters as strangers in this cause; though they are involved in a statement of facts and circumstances. The libellants have no remedy against, or claim on, them. They do not act as agents or trustees for the owners; but in their own right, by a transfer, under the abandonment of the property. There was not even a gratuity given by those persons, on Mr. Gourjon's goods. I apply the evidence, under the commission taken out by him, only to his case.

In the deposition of Florian C. May, he says (answer to the 4th interrogatory), "I never heard the libellants mention they were satisfied with the reward offered and sent to them. On the contrary, I know they were dissatisfied, and that the men proposed to libel the ship. But, on the captain consulting me, I advised him to defer any legal measures, till his return to Philadelphia, when, I was assured, that the owners, and the underwriters, would do him, and the men, ample justice, for their gallant conduct, in recapturing the Fair American, and bringing her into port. And he acquiesced willingly in the advice, reserving the right to make, and support, the claim of salvage, or to some adequate compensation, on his return to Philadelphia." Here is a full proof (as to Mr. Gourjon's goods), of dissatisfaction; and an intention to pursue the claim. So far was Mr. Gourjon from considering the gratuity, which had been accepted, as a matter of any concern to him, or his underwriters, that an offer was made to Captain Brevoor, after his arrival at Philadelphia, of compensation for salvage. It was deemed inadequate, and refused. This offer was made on behalf of the underwriters, on Mr. Gourjon's goods.

I shall close my observations, and opinion, upon this part of the subject, with remarking, as it relates to the powers and jurisdiction of the court, that, I think, there is more weight in the allegation of the libellant's counsel, that in this case, there is an ingredient in which a question of prize is involved, than the respondent's counsel are inclined to allow. Salvage may arise from a recapture from pirates, but it is here agreed, that the recapture was from those who took, as prize, the ship and goods; and acted under a commission, or authority, from a power, considered on the ocean as an enemy.

The point made, as to Brevoor's possessing the ship, not as salvor, but as captain under Dutilh, who then held by a new title, is rendered immaterial, if my opinion respecting the delivery of the goods, is well founded. We find the ship, however, in the hands of the same persons, who had the right to both property and possession, in most of the stages of this transaction. The proceeding in rem, as to the ship, is therefore substantially proper.

The fact of embezzlement, so as to apply it to any of the salvors, is not made out.— Part of Mr. Gourjon's goods did not appear at Charleston. No salvage can be allowed, farther than on the amount of goods sold and delivered. Whether the deficiency was occasioned by plunder on the capture, against which supposition there is some negative testimony, or by embezzlement, at Charleston, does not appear. An opinion of a witness states the probability of its having happened at Charleston, and suspicions, without proof, are aimed at one of the salvors. The French prisoners were on board, at Charleston, a considerable time before the marshal took charge of them. No doubt others, than either Captain Brevoor, or his men, or the prisoners, had, necessarily, access to the ship; which

lay, for a length of time, without orders for her final destination. So that the matter is left in doubt and uncertainty. The captain is not answerable for plunder on capture, or as a recaptor, for losses, arising from the malfeasance of others.[4] His quality and responsibility, after the capture and recapture, were entirely changed. He is amenable for any misconduct of his own, but nothing of this kind is alleged. On the contrary, his character, for integrity, care, and attention, stands very high, and is in proof, in the testimony of Mr. May. Fraud and embezzlement must be clearly proved, and fixed on a party, before I can make him answerable. Nor can the captain be called on now for contribution, as he could have been in his former capacity, when, as master of the ship. he was answerable for the embezzlements of his crew. In that case, the fact, as to the crew, would require more pointed proof, than appears in this cause.

There was an allowance claimed for freight, by Mr. Dutilh's, or Mr. Gourjon's, counsel, but it must be clearly seen, that the freight was lost by the capture: this is, therefore out of the question. If there is any loss of freight, or other misfortune, on account of the failure of the voyage, it is not chargeable to the recaptors. Reimbursement must be sought elsewhere. It is charged, in one of the exhibits, to the underwriters. Had it been saved to the owners, I should have allowed salvage on it, but as it was lost, I have no decision to give on the subject. It only relates to the equity of this case, to state, that the respondents have amply covered the amount of all losses on this ship, and cargo. If they had not, I should deem the claim equally legal and relevant:

| | |
|---|---|
| Mr. Dutilh's ship, sold at Charleston, for five thousand and fifty dollars | $ 5050 |
| His part of the cargo, for seven thousand and fifty-one dollars... | 7051 |
| Mr. Gourjon's (I take this sum, as there is some dispute about the difference between this. and 6770 dollars per M. C. May's account), six thousand four hundred and eleven dollars, and ninety cents....... | 6411 90 |
| | $18512 90 |

Total, eighteen thousand five hundred and twelve dollars, and ninety cents.

I do therefore adjudge, order, and decree, that the recaptors have, and recover, in full satisfaction for their salvage, the sum of four thousand six hundred and twenty-eight dollars, and twenty-two cents, to be apportioned amongst them as follows:[5]

The ship, charged with twelve hundred and sixty-two dollars, fifty cents; out of which, one thousand dollars to be deducted.

| | |
|---|---|
| Mr. Dutilh's goods, seventeen hundred and sixty-two dollars, and seventy-five cents................... | $1762 75 |
| Mr. Gourjon's goods, sixteen hundred and two dollars, and ninety-seven cents ......................... | 1602 97 |
| Balance of ship, two hundred and sixty-two dollars, and fifty cents.. | 262 50 |
| | $3628 22 |

Which sum of three thousand six hundred and twenty-eight dollars, and twenty-two cents, is to be divided as follows, among the recaptors:

| | | |
|---|---|---|
| To Captain Brevoor, (balance of ship,) one hundred and fifty-seven dollars, and fifty cents.......... | $ 157 50 | |
| To John Schier, (seaman) fifty-two dollars,. and fifty cents ................ | 52 50 | |
| To Anthony Fachtman, (cook) fifty-two dollars, and fifty cents.......... | 52 50 | $ 262 50 |
| To Capt. Brevoor, (Dutilh's goods,) one thousand and fifty-seven dollars, and sixty-five cents.......... | 1057 65 | |
| To John Schier, three hundred and fifty-two dolls. and fifty-five cents...... | 352 55 | |
| To Anthony Fachtman, three hundred and fifty-two dollars, and fifty-five cents ................. | 352 55 | 1762 75 |
| To Capt. Brevoor, (Gourjon's goods) nine hundred and sixty-one dollars, and seventy-nine cents....... | 961 79 | |
| To John Schier, three hundred and twenty· dollars, and fifty-nine cents...... | 320 59 | |
| To Anthony Fachtman, three hundred and twenty dollars, and fifty - nine cents ................. | 320 59 | 1602 97 |
| | | $3628 22 |

So that Captain Brevoor is to receive in the whole, two thousand one hun-

---

[4] It has been frequently determined, in this court, that during the period of detention, either by captors, as prize, or belligerents, in amity, for adjudication, all the responsibilities of the officers and crew are suspended. But proof has been admitted, to shew either distinct acts of plunder, or embezzlement. by the crew, individually or in collusion with the possessors of the ship. The general principal of contribution, by all, has not been allowed, during the forcible detainer; but the frauds and malfeazance of individuals. have been permitted to be sett off, against their respective claims. In the case of The Blaireau, 2 Cranch [6 U. S.] 240, a claim of salvage, by the master. who had been guilty of embezzlement, was dismissed.

dred and seventy-six dollars, and ninety-four cents............... 2176 94
John Schier, seven hundred and twenty-five dollars, and sixty-four cents　　725 64
Anthony Fachtman, seven hundred and twenty-five dollars, and sixty-four cents................... 725 64
　　　　　　　　　　　　　　　$3628 22

And I do further adjudge, order, and decree, that the said ship Fair American, with her tackle, apparel, and furniture, (or so much thereof as may be necessary) be condemned, and that the same be sold by the marshal of this district, for the payment of the several recaptors aforesaid, of their respective proportions of the said two hundred and sixty-two dollars, fifty cents, the sum charged upon the ship. And I finally adjudge, order, and decree, that the respondents, Stephen Dutilh, and John Gourjon, pay to the said recaptors, the several sums of money, above charged upon the goods of them, the said Stephen Dutilh, and John Gourjon, respectively: all which are to be brought into court, to be distributed agreeably to this decree. The costs and charges to be paid by the respondents, in proportion to their respective interests.

NOTE [from original report]. On further consideration, I have not been satisfied with the quantum of salvage decreed. I should have been gratified if a superior court had reviewed and rectified what I now conceive to have been an error; but no appeal was entered. Brevoor and his associates should have had a reward at least as great as those usually receive who, without personal conflict and danger in combat, save property wrecked or deserted, or in peril of so being. Perhaps comparative merit would justify a more ample remuneration. In the latter cases, the ordinance of Louis XIV. has had influence with me, and due attention has been paid to the value of the property risked in the saving ship. I have, too, in all salvage cases regarded the amount in value of the reward, without scrupulously attending to any proportion it bore to the gross amount of the articles saved. I think there is weight in some of the reasoning of Azuni on this subject. Marit. Law Cas. 279, 280. Whether the merit of the salvors of the wrecked or abandoned vessels or goods should be diminished because the deserts of rescuers are personally greater seems not to me clear. This is a subject on which no fixed rules can be established; and it will, therefore, depend, in no small degree, on the mere opinions of those who decide. See Azuni, Mar. Law, pp. 279, 280, note (269), and authorities cited on this point. See 3 C. Rob. Adm. (Phil. Ed.) 288.